CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

FEB 0 1 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| WALTER CHAPLIN, | ) | CASE NO. 5:12CV30028 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | REPORT AND RECOMMENDATION |
|  | ) |  |
|  | ) | By: B. WAUGH CRIGLER |
| DANIEL MAAS, | ) | U.S. MAGISTRATE JUDGE |
| JON TYREE, and | ) |  |
| RANDALL FISHER, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

The August 20, 2012 motion to dismiss and motion for summary judgment filed by defendants Daniel Maas ("Maas"), Jon Tyree ("Tyree") and Randall Fisher ("Fisher") are before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct proceedings and render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for their disposition. Plaintiff has alleged damages arising under 42 U.S.C. § 1983 for alleged violations of his Eighth and/or Fourteenth Amendment rights as the result of injuries cause by the deliberate indifference on the part of Maas and Tyree to his left leg being shackled too tightly. He supplemented his federal claim with a Virginia common law claim alleging gross negligence on the part of Maas and Tyree and seeking to impose liability against Fisher under the doctrine of *respondeat superior*. Maas and Tyree have moved to dismiss plaintiff's federal claim on the basis that it fails to set forth facts sufficient to support his § 1983 claims, and, in the alternative, on the basis of qualified immunity. All defendants have moved to dismiss the supplemental state law claim for failure to state facts sufficient to support a cause of

action for gross negligence under Virginia law. Furthermore, the defendants seek summary judgment on the federal claims and the supplemental state law claim on the grounds that plaintiff failed to exhaust his administrative remedies and on the additional ground that the state law claim is barred by the applicable statute of limitations. For the reasons that follow, the undersigned RECOMMENDS that an Order enter as follows:

1) GRANTING Maas' motion to dismiss plaintiff § 1983 claim and plaintiff's supplemental state law claim for gross negligence against him and dismissing Maas from this action;

2) GRANTING the motion for summary judgment filed by Tyree and Fisher on the supplemental state law claim for gross negligence as time barred and dismissing Fisher from this action;

3) DENYING Tyree's motion to dismiss the § 1983 claim for failure to state a claim and for qualified immunity;

4) DENYING, as moot, the motion for summary judgment filed by Maas for failure to exhaust or as barred by the statute of limitations.

## CASE SUMMARY

On May 27, 2008, plaintiff[1] was found guilty of three counts of burglary and three counts of grand larceny. (Dkt. No. 12-1, at 4.) Plaintiff was remanded to custody and held at the Middle River Regional Jail ("MRRJ") pending sentencing. *Id.* at 1, 5. On June 5, 2008, plaintiff

---

[1] Plaintiff is a prisoner in the custody of the Virginia Department of Corrections currently incarcerated at the Coffeewood Correctional Center near Culpeper, Virginia. (Dkt. No. 1, at 2.) During the time period described in the complaint, defendant Daniel Maas was a corrections officer at the Middle River Regional Jail; defendant Jon Tyree was a deputy sheriff of the Augusta County Sheriff's Department and served as bailiff in the Circuit Court of Staunton, Virginia; and defendant Randall Fisher was the elected Sheriff of Augusta County, and Tyree was a deputy in his office. *Id.* at 2-3.

was transported from MRRJ to the Circuit Court of Staunton, Virginia for a further proceeding, which the undersigned infers was his sentencing. (Dkt. No. 1, at 3.) In preparation for transport, MRRJ correctional officer Maas applied leg shackles to the plaintiff. Plaintiff asserts that immediately he complained that the left shackle was too tight. *Id.* He alleges that Maas checked and tested the shackle but "refused and would not loosen it." *Id.* Upon arriving at the Staunton Circuit Court, plaintiff's custody was turned over to the defendant Deputy Sheriff Tyree. Plaintiff alleges he once more complained that his left leg shackle was too tight and "exceedingly painful." *Id.* He further alleges that, in response, Tyree informed plaintiff that he did not have a key and, further, that Tyree made no effort to locate one and took no action to alleviate plaintiff's "painful and dangerous condition." *Id.* Plaintiff avers that he remained shackled from 12:30 pm to 6:30 pm, when he was returned to MRRJ. *Id.*

Shortly after his return, plaintiff claims that his foot had swelled and become discolored, whereupon he sought and obtained medical treatment. *Id.* Plaintiff alleges that, as a result of his shackles remaining too tight from the point of shackling onward, he suffered permanent and serious nerve damage, rendering him unable to fully utilize his left foot. *Id.* at 4.

Plaintiff filed an Inmate Grievance on June 17, 2008 complaining about the incident and asking that his foot and ankle be examined and photographed by an emergency room doctor. (Dkt. 12-1, at 22.) On June 23, 2008, MRRJ officials responded and allowed plaintiff to see a Dr. Quinones. *Id.* Plaintiff did not appeal this response. (Dkt. No. 12-1, at 2.) On July 29, 2008, plaintiff filed another Inmate Grievance, complaining that treatment he received had not alleviated his symptoms, and he requested to be seen by a neurologist and not Dr. Quinones. *Id.* at 23. (Dkt. No. 12-1, at 2.) On August 4, 2008, MRRJ officials responded that Dr. Quinones would recheck him. *Id.* Plaintiff did not appeal this response.

On February 11, 2009, plaintiff filed a third Inmate Grievance, complaining that his symptoms had not improved despite treatment and asking that he undergo a neurological examination, that he have surgery to fix his foot, and that he be compensated for pain and suffering. (Dkt. No. 18-1, at 3.) Plaintiff was transferred into the state penal system on February 13, 2009, after which he received no response from MRRJ officials concerning his grievance. *Id.*; (Dkt. No. 18, at 6-7.) It is undisputed that the MRRJ officials considered the grievance to have become final on the date plaintiff was transferred into the state penal system, and that no further action was taken on it after that date. (Dkt. No. 20-1, at 2.)

On May 25, 2010, plaintiff filed an action against the defendants in the Circuit Court of Augusta County, Virginia. (Dkt. No. 1, at 2.) On January 18, 2012, the Circuit Court granted plaintiff's request for a nonsuit. *Id.* On June 15, 2012, plaintiff filed the instant action in this court. *Id.* His First Cause of Action is under 42 U.S.C. § 1983 and alleges that defendants Maas and Tyree violated his rights secured under the Eighth Amendment and/or Fourteenth Amendment in that they were deliberately indifferent to the risk of harm caused by his left shackle being too tight. He seeks $875,000 dollars in compensatory damages for the resulting injuries and $25,000 in punitive damages for conduct he alleges to have been "willful, reckless, wanton and intentional." (Dkt. No. 1, at 4-5.) Plaintiff's Second Cause of Action alleges that the conduct of Maas and Tyree constituted gross negligence under Virginia law. *Id.* at 5. He again seeks $875,000 dollars in compensatory damages and $25,000 in punitive damages on this claim. Plaintiff also asserts that Sheriff Fisher is liable for the compensatory damages caused by the conduct of his deputy, Tyree, under the doctrine of *respondeat superior*. *Id.*

The defendants' Motion to Dismiss and Motion for Summary Judgment were filed on August 20, 2012. (Dkt. Nos. 9, 11.) On October 26, 2012, the presiding District Judge referred

all dispositive motions to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct proceedings and to issue a Report and Recommendation as to the disposition of the motions. (Dkt. No. 21.)

## MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), a cause of action may be dismissed for "failure to state a claim upon which relief may be granted." The court must accept as true any factual allegations contained in the complaint, though it need not accept legal conclusions; and, to survive a motion to dismiss, a complaint must provide sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). Facial "plausibility" lies on a spectrum between possibility and probability, and it is established when the court is able to draw a reasonable inference that the defendant may be liable for the conduct alleged. *Id.* The complaint need not include detailed factual allegations, but the factual allegations must be more than a formulaic recitation of the elements of a cause of action and must raise a plausible right to relief above the speculative level. *Id.* It is within the court's discretion to consider evidence outside of the pleadings; however, if the court chooses to do so, it should convert the motion to dismiss to a motion for summary judgment. *See McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010).

### a. SECTION 1983 CLAIMS

It is well established that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). This prohibition extends to inmates held in post-conviction detention and protects them from inhumane treatment and confinement conditions while imprisoned. *Williams v.*

*Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In general, there are two components to an Eighth Amendment claim, one objective, and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 837-839 (1994). First, the court must consider whether the deprivation suffered by, or injury inflicted upon, the inmate was objectively harmful or sufficiently serious enough to constitute a constitutional violation.[2] *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). Second, the court also must consider whether the prison official acted with a sufficiently culpable state of mind; namely in order to punish or inflict unnecessary harm on the inmate. *Id.*; *see also Farmer v. Brennan*, 511 U. S. 825, 837-839 (1994). What is necessary to establish prohibited infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson*, 503 U.S. at 5; *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

As plaintiff points out, it is not clear whether a claim by an inmate who asserts use of excessively tight restraints should be evaluated as one for the use of excessive force or as one challenging the conditions of confinement.[3] (Dkt. No. 19, at 4-5.)

Under the excessive force standard, an inmate first must demonstrate that the amount of force employed was "nontrivial" and objectively harmful enough to offend contemporary standards of decency. *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1179 (2010); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). This showing can be met by pain itself without the necessity of alleging or

---

[2] It is axiomatic that prison conditions, alone, may be harsh; and that not every injury suffered by an inmate may be serious enough to invoke constitutional protection. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).

[3] The standard applied by the Sixth Circuit specifically addresses handcuffing. Under that standard for excessive force, a plaintiff must allege that: "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *See Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009); *See also Hales v. City of Newport News*, No. 4:11CV00028, 2011 WL 4621182, at *11 FN 18 (E.D.Va. September 30, 2011) (citing *Morrison* in denying the defendants' motion to dismiss the plaintiff's excessive force claim of too tight handcuffing).

demonstrating enduring injury, keeping in mind that use of *de minimis* physical force does not rise to a constitutional deprivation. *See Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996); *Hudson*, 503 U.S., at 9-10. Second, the inmate must demonstrate on the part of the officers "wantonness in infliction of pain," answering "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 322 (1986); *Wilkins*, 130 S.Ct., at 1178.

Under the conditions of confinement or deliberate indifference standard, an inmate must show: (1) a serious deprivation of a basic human need, which resulted in a serious or significant physical or emotional injury; and (2) deliberate indifference to prison conditions on the part of prison officials. *Strickler v. Waters*, 989 F.2d 1375, 1379-1381 (4th Cir. 1993); *Hudson*, 503 U.S. at 8-10. The plaintiff must produce evidence that a particular defendant was aware of facts from which he could draw a reasonable inference that a substantial risk of serious harm existed, that he actually drew that inference, and that he disregarded the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 835-837, 847 (1994). Unlike excessive force, the conditions of confinement standard requires a showing of significant injury. *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

The Hon. Glen E. Conrad, Chief Judge of the Western District of Virginia, recently considered a similar claim under both standards. *Holley v. Johnson,* No. 7:08CV00629, 2010 WL 2640328, at *12–15 (W.D.Va. June 30, 2010).[4] The undersigned will follow this lead.

The defendants contend that the conduct in question should be evaluated under the excessive force standard, and that such conduct alleged here is not objectively harmful enough to

---

[4] The Hon. James R. Spencer, then Chief Judge in the Eastern District of Virginia, acknowledged the lack of clarity in the decisional authorities for assessing restraint (handcuffing) cases. *Majette v. GEO Group, Inc.*, No. 3:07CV00591, 2011 WL 166289, *5-7 (E.D.Va. January 18, 2011). Nevertheless, he cited *Holley* and assessed the claim under both the excessive force and the deliberate indifference standards.

offend contemporary standards of decency. (Dkt. No. 10, at 4-5.) They argue that the mere fact that plaintiff complained of discomfort, without more, is insufficient to establish conduct by the defendants that rises to a violation of plaintiff's constitutional rights. *Id.* at 6. The defendants also argue that the plaintiff has not alleged facts demonstrating that the defendants acted maliciously and sadistically for the purpose of causing harm. *Id.* at 4-5. They point out that plaintiff has not alleged that any defendant made statements from which a reasonable inference can be drawn that their conduct was malicious, that they possessed an improper motive, that they appreciated the potential for injury under the circumstances, or that the shackle was applied incorrectly or in contravention of any standard procedure.[5] *Id.* Furthermore, in regard to the deliberate indifference standard, the defendants pointed out at argument that the Eighth Amendment does not protect inmates from all discomfort, and that the plaintiff does not allege that he repeated his requests more than once to either Maas or Tyree or that either defendant could infer that plaintiff was at risk of substantial harm. Accordingly, they argue that plaintiff has failed to allege facts sufficient to establish either the objective or subjective component of a violation. (Dkt. No. 10, at 3-7.)

Plaintiff asks the court to apply the deliberate indifference standard, because the gravamen of the case is not the need for the application of shackles in the first instance but the refusal of the defendants to loosen the shackles after plaintiff made known they were too tight and injuring him. (Dkt. No. 19, at 4.) He offers that the defendants' alleged lack of concern, and their failure to respond to plaintiff's complaint about his shackles in a way that would have

---

[5] Plaintiff did attach the Declaration of Timothy Lynch to their Memorandum in Opposition to the defendants' Motion to Dismiss. (Dkt. No. 19-1.) Lynch asserts that the shackle was attached incorrectly and that both Maas and Tyree's action were not in line with standard practice and procedure. (Dkt. No. 19-1, at 3-4.) This declaration is outside the pleadings.

ameliorated the risk of harm, presents a classic claim for deliberate indifference to a serious need which actually produced a "substantial risk of harm to the inmate." *Id.* at 4-5.

In the alternative, plaintiff argues that he has stated a claim even under the excessive force standard. (Dkt. No. 19, at 6.) He points to the factors set forth in *Whitley v. Albers*, 475 U.S. 312 (1986) for determining whether an officer acted with "wantonness." While he acknowledges the need for the application of some force in the first instance, he believe his complaint challenges the propriety of the relationship between the need and the amount of force that was used, the extent to which the defendants' perceptions concerning the amount of force used were reasonable, and the clearly pleaded facts that no efforts were undertaken to temper the severity of the forceful response. (Dkt. No. 19, at 6-7.) Plaintiff contends that maintaining shackles that were unnecessarily tight for the duration alleged in the complaint constitutes disproportionate and unnecessary force which the defendants made no effort to alleviate. *Id.* at 7. He does not believe that he is required to plead direct evidence of wantonness, such as statements by either defendant indicating malicious intent, but that he need only show facts from which the court may draw reasonable inferences for wantonness in infliction of pain. *Id.* at 7-9. He further argues that the court can look to the significance of his documented injuries and infer from the degree of harm suffered that excessive force was used and unnecessary and wanton pain was inflicted by the defendants under the circumstances of this case. *Id.*

**Defendant Maas**

Plaintiff alleges that Maas applied leg shackles to him before he was transported to Staunton, and that plaintiff immediately complained that the left shackle was too tight and sought to have it loosened. There is no debate that Maas responded to plaintiff's complaint by inspecting the shackle. However, plaintiff alleges that Maas "refused and would not loosen it."

(Dkt. No. 1, at 3.)  Plaintiff does not allege any continuing involvement with this defendant once plaintiff left MRRJ.

The application of shackles, alone, does not constitute use of excessive force when done for a legitimate purpose and without significant harm to the inmate.  *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002).  Here, the legitimate purpose was plaintiff's transport from MRRJ for a court appearance, and it is entirely reasonable for inmates to remain shackled for that purpose. *Majette v. GEO Group, Inc.*, No. 3:07CV00591, 2011 WL 166289, *5-7 (E.D.Va. January 18, 2011) (quoting *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997).

However, the right to shackle an inmate is not without limits.  Plaintiff clearly alleges that he suffered injuries from the leg shackling which was tight enough to cause the significant nerve injuries he experienced.  The undersigned agrees with plaintiff that the court may look to the nature of the harm to draw inferences related to whether the force used in the application of the shackles in the first place was excessive and not trivial.  (Dkt. No. 1, at 3-4.); *See Whitely*, 475 U.S. at 321.  Moreover, he alleges that the physical injuries he suffered as a result are significant and long-lasting.  (Dkt. Nos. 1, at 3-4.)  However, the court should also take into account any intervening conduct by others as well as the period of time that elapsed between the alleged violation and the onset of injury.  In other words, causation must be sufficiently established in the pleading.

Turning to the defendants' states of mind, plaintiff alleges that he immediately informed Maas that the leg shackle was too tight.  (Dkt. No. 1, at 2-3.)  However, there is no indication in the complaint that he told Maas the shackle was causing him pain, and there is no assertion that

there was any visible injury.[6] He further claims that Maas examined the leg shackle in response to his complaint, but he "refused and would not loosen it." (Dkt. No. 1, at 3, ¶12.)

As said, under the excessive force analysis, the court must consider several factors to determine whether the officer displayed "wantonness in infliction of pain": 1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of any reasonably perceived threat that the application of force was intended to quell; and 4) any efforts made to temper the severity of the forceful response. *See Whitley v. Albers*, 475 U.S. 312, 320-321 (1986). Here, the only need for force was that which reasonably would secure the plaintiff for transport to court, and there is nothing in the complaint that would indicate plaintiff's conduct created a circumstance necessitating more than the application of minimal force to accomplish that purpose.

In that regard, plaintiff has alleged that, when he complained that the shackle was tight and uncomfortable, Maas examined it but refused to adjust it. Very soon thereafter, plaintiff left Maas' custody and headed to court. Plaintiff offers no allegation that, at the time, he was suffering injury, or that Maas' conduct at MRRJ actually caused him the injury which he later did indeed suffer. The most that might be inferred from the complaint is that Maas applied the shackles which allegedly were tight and uncomfortable, checked them, declined to adjust them, and that at some point during the balance of the day when he was in the custody of others, one of the shackles caused injury.

In *Carter v. Morris*, 164 F.3d 215 (4th Cir. 1998), the Court of Appeals determined that a plaintiff's mere allegation that handcuffs were too tight was insufficient, as a matter of law, to

---

[6] Plaintiff does state in his affidavit attached to his memorandum in Opposition to Defendants' Motion for Summary Judgment, "I asked Mr. Maas to loosen the cuff because it was exceedingly tight and immediately uncomfortable." (Dkt. No. 18-1, at 2.) Mere discomfort does not provide a basis for § 1983 liability.

11

state a claim for relief under the Fourth or Fourteenth Amendments. *Id.* at 219, fn 3. While plaintiff has alleged that he suffered serious and permanent injuries, the plaintiff's allegations against Maas, when viewed with all the other allegations in the complaint, fail to demonstrate a causal link between his conduct and those injuries.

In addition, plaintiff has failed to allege adequate facts satisfying the subjective component of the excessive force claim. Here, there was an acknowledged need for the application of force in the form of restraints in order to transport plaintiff from MRRJ to court. Plaintiff suggests that the amount of force used was unnecessary and inappropriate because there were no emergency circumstances and because of his compliance with the officers. This, however, does not obviate the need for restraints in the first instance. *See Majette v. GEO Group, Inc.*, No. 3:07CV00591, 2011 WL 166289, *5-7 (E.D.Va. January 18, 2011) (quoting *Haslar v. Megerman,* 104 F.3d 178, 180 (8th Cir. 1997).

Plaintiff also concedes in his complaint that Maas examined the shackle in response to his complaint, but plaintiff never alleges that he told Maas that the shackle was painful, or that it otherwise applied improperly. Unlike in *Cruey v. Huff*, No. 7:09CV00516, 2010 WL 1814144, at *3-4 (W.D. Va. May 5, 2010), plaintiff has made no allegations that the defendant threw plaintiff to the ground or abused him in the process of handcuffing him. Unlike in *Hales v. City of Newport News*, No. 4:11CV00028, 2011 WL 4621182, *10-12 (E.D.Va. September 30, 2011), there are no allegations that plaintiff repeated his complaints or was entirely ignored by Maas. In all, and irrespective of whether the shackle was affixed to tight in the first instance, plaintiff has failed to sufficiently plead beyond mere negligence, if anything, and certainly not the Maas acted maliciously with the intent to cause him harm.

Plaintiff's deliberate indifference claim against Maas suffers the same lack of factual support. The undersigned accepts the common sense notion that shackles applied too tightly and left on long enough may cause serious injury to an inmate. Again, there is no debate according to the pleadings that plaintiff, in fact, suffered serious injury at some point during the time he was shackled. To repeat, plaintiff clearly alleges that Maas, in fact, did check and test the shackles and determined not to adjust them. In other words, the complaint reveals that Maas did take some steps in response to plaintiff's complaint. Plaintiff has not alleged that, at the time, he was visibly in pain or clearly at risk of serious injury; or that he told Maas he was in serious pain. Accordingly, the undersigned does not believe the complaint sets forth sufficient facts suggesting the defendant was aware of a risk of substantial harm and deliberately failed to respond to it.

Maas' motion to dismiss for failure to state a claim should be GRANTED, and it is so RECOMMENDED.[7]

**Defendant Tyree**

Plaintiff alleges that, upon arriving at the courthouse, he also informed Tyree that his left leg shackle was too tight and causing him pain. (Dkt. No. 1, at 3.) Plaintiff claims that Tyree responded simply by informing plaintiff that he did not have a key to unlock the shackles, and that Tyree made no effort to check or loosen the shackle between that time and the time plaintiff departed the courthouse hours later. *Id.* Plaintiff also alleges that he remained shackled for the duration of his court appearance and the trip back to MRRJ, a period of some six hours. *Id.* at 3, ¶16.

Application of the excessive force standard appears less appropriate under this set of circumstances. Plaintiff does not allege that Tyree was present at the time he was shackled, or

---

[7] In the event that the presiding District Judge does not adopt this recommendation, the undersigned also will evaluate whether Maas is entitled to qualified immunity.

Case 5:12-cv-30028-MFU-BWC Document 25 Filed 02/01/13 Page 13 of 27 Pageid#: 151

that Tyree committed any forceful act that contributed to plaintiff's harm. Instead, the plaintiff's claim appears to rest entirely on the allegation that Tyree was deliberately indifferent to his serious need. *See Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (since a police officer was not accused of ever touching the plaintiff, no excessive force claim could be brought against him).

Plaintiff has claimed that his left leg shackle was too tight and resulted in a lasting and debilitating injury. Such an allegation meets the requirements of the first prong of the deliberate indifference standard, by being a serious deprivation of a basic human need, which resulted in a serious or significant physical or emotional injury. *Strickler v. Waters*, 989 F.2d 1375, 1379-1381 (4th Cir. 1993). While Tyree did not affix the shackle, plaintiff did make him aware that the shackle was too tight, and that it was causing him pain, imparting knowledge of a risk of harm to plaintiff. Tyree was not at liberty simply to "dust off" plaintiff's complaint with a dismissive response that he did not have a key. When coupled with the allegation that Tyree did nothing further to either check the tightness of the shackle, locate a key, or find a person with a key during the entire period set forth in the complaint, the undersigned finds that a reasonable inference can be drawn that Tyree was deliberately indifferent to plaintiff's serious need.[8] His motion to dismiss plaintiff's § 1983 claim for failure to state a claim upon which relief can be granted should be DENIED. It is so RECOMMENDED.

**Qualified Immunity**

Qualified immunity "shields government officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[8] Defendants' counsel argued at the hearing that plaintiff alleges only one encounter with Tyree (or for that matter Maas), and that to state a claim, he should be required to plead continued complaints about the condition. The undersigned believes that plaintiff has set forth sufficient threshold facts to establish deliberate indifference, and whether other circumstances existed that mitigate or dispel such indifference can be addressed in discovery.

Case 5:12-cv-30028-MFU-BWC Document 25 Filed 02/01/13 Page 14 of 27 Pageid#: 152

reasonable person would have known.'" *Trulock v. Freeh,* 275 F.3d 391, 399 (4th Cir. 2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The court follows a two step test to determine whether a defendant is entitled to qualified immunity: (1) Do the pleaded facts demonstrate that the defendant's conduct violated a constitutional right; and (2) Was the constitutional right clearly established. *See Blankenship v. Manchin*, 471 F.3d 523, 527-528 (4th Cir. 2006). To be clearly established, existing precedent must have placed the constitutional question beyond debate, thereby making the right sufficiently clear so that a reasonable official would have understood that what he was doing violated that constitutional right and subjected him to liability. *See Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).

There is no question in the undersigned's mind that either using excessive force in the application of shackles or being indifferent to their tightness after they are applied can constitute a violation of an inmate's constitutional rights irrespective of the standard used to assess the conduct. As stated above, the undersigned does not believe that plaintiff has sufficiently set for a claim against Maas for a violation of plaintiff's Eighth or Fourteenth Amendment rights. Should the presiding District Judge disagree, there is no question in the undersigned's mind that the allegations plaintiff has set forth in his complaint against Maas fail to establish that Maas understood, or that a reasonable correctional officer would have understood, his conduct violated plaintiff's constitutional rights. According to the complaint, Maas responded to plaintiff's complaints and examined his condition. (Dkt. No. 1, at 3.) Plaintiff has not alleged that he complained of any serious pain, or that he was at risk of such harm so as to make Maas reasonably aware that failing to loosen his shackle would put plaintiff at great risk of serious harm and constitute a constitutional violation.[9] Therefore, even if the presiding District Judge

---

[9] *See Hales v. City of Newport News*, No. 4:11CV00028, 2011 WL 4621182, at *11-12 (E.D.Va. September 30, 2011) (Citing *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d

Case 5:12-cv-30028-MFU-BWC   Document 25   Filed 02/01/13   Page 15 of 27   Pageid#: 153

does not adopt the undersigned's recommendation to dismiss plaintiff's complaint against Maas for failure to state a claim under § 1983, the undersigned finds he is entitled to qualified immunity, as a matter of law on the plaintiff's own pleadings, and RECOMMENDS that the complaint be dismissed against him on that ground.

Tyree's assertion of qualified immunity is a different matter. First of all, it is the undersigned's view that any reasonable person, much less an officer in charge of prisoners in the courthouse, should know, and likely does know, that overly tight shackles can cause substantial damage if complaints of severe pain are not given some reasonable degree of attention. Here, a reasonable inference from the complaint is that Tyree did not inspect for tightness and essentially shirked any duty to the plaintiff by denying he had a key and, then, by not seeking some means to loosen the shackle. The law may not require an officer to respond to every inmate complaint,[10] but, here, plaintiff had been shackled since leaving MRRJ, he was experiencing severe pain, he was in the complete control of the sheriff's office, any reasonable deputy would know that shackles left too tight for too long can cause serious injury, and Tyree is alleged to have done nothing. Accordingly, plaintiff's allegations are sufficient at this stage of the proceedings to overcome Tyree's assertion of qualified immunity.[11] It is RECOMMENDED that Tyree's motion on this ground be DENIED.

### b. GROSS NEGLIGENCE

---

[10] 394, 401 (6th Cir. 2009) in support of the fact that it is clearly established that unduly tight handcuffing is not permitted under the Constitution, but plaintiff must allege that the officer ignored their complaints to survive a motion to dismiss).

[10] *See Cruey v. Huff*, No. 7.09CV00516, 2010 U.S. Dist. LEXIS 118374, *25-26 (W.D.Va. November 8, 2010) (citing *Fettes v. Hendershot*, 375 F.Appx. 528, 533 (6th Cir. 2010).

[11] It is likely that evidence adduced during discovery will shed more light on both the plaintiff's and Tyree's conduct while plaintiff was held in the Staunton Circuit Court. Whether that evidence will establish qualified immunity as a matter of law will need to wait for a later day.

Under Virginia law, governmental agents are immune from suit for simple negligence but not for gross negligence. *Green v. Ingram*, 269 Va. 281, 290-291 (2005). Gross negligence is "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded [people] although something less than willful recklessness." *Ferguson v. Ferguson,* 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971); *Green v. Ingram*, 269 Va. 281, 290-291 (2005). A claim of gross negligence will not lie where the defendant is shown to have exercised some degree of care toward the plaintiff. *Whitley v. Commonwealth*, 260 Va. 482, 488-490 (2000); *Colby v. Boyden,* 241 Va. 125, 133 (1991). The Virginia Supreme Court has recognized the distinction between gross negligence and deliberate indifference. However, it also equated the factual elements supporting a claim for gross negligence with those necessary to establish one for deliberate indifference to the point that it applied the doctrine of collateral estoppel to any prior determination on the merits of either. *Whitley v. Commonwealth*, 260 Va. 482, 488-490 (2000).

All defendants join in their opposition to plaintiff's gross negligence claim. They assert that gross negligence involves an indifference to others that would shock a fair minded person and constitutes an utter disregard of prudence amounting to a complete neglect of the safety of another.[12] (Dkt. No. 10, at 9-10.) In their brief and at oral argument, they have offered identical reasons to those offered in opposition to plaintiff's excessive force/deliberate indifference claim as those supporting dismissal of plaintiff's gross negligence claim; namely: (a) that the defendants' conduct does not rise to an extreme departure from routine conduct for restraining a prisoner for transport to court; (b) that there are no allegations that the officers observed that the

_____

[12] Citing *Green v. Ingram*, 269 Va. 281, 290 (2005); *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987).

cuff was too tight or that plaintiff was suffering an injury; and (c) that plaintiff is claiming that the shackle was too tight and, in retrospect, that he suffered an injury, is insufficient to rise to the level of gross negligence. *Id.* at 10.

Plaintiff, likewise, rests on much of what he asserted in response to defendants' motion to dismiss the § 1983 claim; namely: (a) that it is a matter of common knowledge that too tight leg shackles can lead to serious and permanent injury; (b) that he told the defendants that his left shackle was too tight, and yet, they took no action to temper the discomfort and pain he was suffering from; and (c) that he was under the complete control and care of the defendants who showed complete neglect for his safety. (Dkt. No. 19, at 14.) Accordingly, he argues that it is a fair and reasonable to infer that the shackle was extremely tight, the conduct of the defendants was indifferent to his complaints, and the resulting harm was foreseeable.[13]

Gross negligence will not lie where a defendant exercises some degree of care toward the plaintiff. Here, Maas examined the plaintiff in response to his complaints of pain, and without further allegations that the plaintiff was visibly in pain or visibly at risk of harm; the plaintiff's claims of gross negligence against Maas should not proceed. For the same factual reasons the undersigned recommended dismissal of plaintiff's § 1983 claim against Maas, the undersigned RECOMMENDS that Maas' motion to dismiss plaintiff's state law gross negligence claim be GRANTED.

Essentially for the same reasons the undersigned has found that plaintiff stated a § 1983 claim against Tyree, the undersigned believes plaintiff has stated a claim for gross negligence against Tyree and against Fisher, who is joined under the doctrine of *respondeat superior*. The defendant took no steps to examine or loosen the leg shackle despite plaintiff's complaints of pain, nor did he seek out help to do so. The plaintiff was in the defendant's care at the time of

---

[13] Citing *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994).

Case 5:12-cv-30028-MFU-BWC   Document 25   Filed 02/01/13   Page 18 of 27   Pageid#: 156

the incident and, if the allegations of the complaint are accepted as true, Tyree displayed an utter disregard for prudence by failing to take any steps to alleviate the plaintiff's significant risk of harm to which plaintiff had made him aware. Accordingly, undersigned RECOMMENDS that the motion to dismiss plaintiff's gross negligence claim filed by Tyree and Fisher be DENIED.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if taking the evidence and all reasonable inferences drawn there from in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(a); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) (emphasis in original). For a non-movant to present a genuine issue of material fact, "conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotes removed). Although summary judgment is "favored as a mechanism" to avoid an unnecessary trial, it "must be used carefully so as not improperly to foreclose trial on genuinely disputed, material facts." *Thompson Everett, Inc. v. National Cable Adv., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir. 1995). As recently stated by the Fourth Circuit, "The question at the summary judgment stage is not whether a jury is *sure* to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

### a. Failure to Exhaust Administrative Remedies

19

Both federal law and state law require that an incarcerated plaintiff exhaust available administrative remedies before instituting an action arising out of conditions of confinement.[14] The Prison Litigation Reform Act provides, in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *See also Jones v. Bock*, 549 U.S. 199 (2007).[15] Similarly, Virginia law requires that "No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted." VA Code Ann. § 8.01-243.2. An inmate must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials will have been given an opportunity to administratively address the claims. *See Woodford v. Ngo,* 126 S.Ct. 2378, 2384-2387 (2006). Having done that, an inmate is considered to have exhausted his available remedies, even where prison employees do not respond. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). Failure to exhaust is an affirmative defense, not a jurisdictional requirement, and, thus, inmates need not plead exhaustion, nor do they bear the burden of proving it. *See Jones v. Bock,* 127 S.Ct. 910, 918-926 (2007).

There is no debate here, and the defendants admit, that plaintiff did file grievances with MRRJ officials. (Dkt. No. 12, at 5-7.) However, the defendants take the position that the grievances concerned medical care rather than the claims of excessive force or deliberate

---

[14] Conditions of confinement have been construed to include matters related to the transport of inmates. *See Foreman v. Unnamed Officers of the Federal Bureau of Prisons*, No. DKC-09-2038, 2010 WL 2720817, at * 4-5 (D.Md. July 7, 2010); *See also Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012); *Theilman v. Leean*, 282 F.3d 478 (7th Cir. 2002).
[15] *Jones* does set limitations on the scope of § 1997e, but not in any ways relevant to this case.

indifference, and they point out that plaintiff did not appeal any of the responses to his grievances within the required 24 hour period after receiving a response. *Id.* Therefore, they contend that plaintiff has failed to exhaust his administrative remedies. *Id.*

Plaintiff first replies that there were no administrative remedies available to him related to his allegations against either Deputy Tyree or Sheriff Fisher. Neither were employees of the Virginia Department of Corrections, and there were no administrative remedies available through the Augusta County Sheriff's Department. (Dkt. No. 18, at 3.)

Even so, plaintiff argues that he exhausted all administrative remedies that were available to him before being taken into the state system. He contends that while MRRJ officials adequately addressed his medical requests, removing the need in his mind for an appeal, they ignored his complaints in those grievances regarding the tightness of his leg cuff. *Id.* at 4. He also points out that he never was provided with notice of any response to his third grievance, which explicitly sought monetary compensation for his injuries. *Id.* at 5. He contends that the third grievance technically remains pending, as the grievance appeal policy only requires that he appeal within 24 hours after receipt of the grievance response. *Id.* Accordingly, plaintiff asserts that, as a result of their actions, MRRJ officials waived the exhaustion requirements.[16]

The MRRJ "Inmate Handbook" includes an "Inmate Grievance Procedure." (Dkt. No. 12-1, at 11.) As provided in the handbook

> The grievance procedure allows you to formally express concerns about jail policy, procedures, and/or treatment only after proper means have been used to informally resolve the issue. You must attempt to resolve your concern with an officer or staff

---

[16] Citing *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (prison officials can waive exhaustion requirements by inadequacies in their written policies or failure to follow them); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.")

member prior to submitting a grievance. If the situation is not settled to your satisfaction, request a Grievance Form. State in your grievance the steps you have taken to informally resolve the issue and the response you have been given to your informal attempts.

Grievances will be returned within 10 working days after being received.

The handbook also provides that an inmate will have 24 hours after receipt of the response to submit an "Appeal Form," and that appeals decisions are final. *Id.*

To reiterate, plaintiff filed three grievances during his incarceration at MRRJ. (Dkt. Nos. 12-1, at 22-23; 18-1, at 3.) Each grievance refers to the alleged incident and points to his resulting injuries as the reason for filing. *Id.* In plaintiff's third grievance, he states, "I've been having problems with my left foot from where ankle cuffs were applied to (sic) tight in June of 2008. I have seen both Dr. Quinones and Dr. Hopkins but my foot still swells it's still blue. And I'm still in pain. I was advised that there was damage done to blood vessels carring (sic) blood back to my hart (sic)." (Dkt. No. 18-1, at 3.) Plaintiff requested a neurological examination, surgery, and monetary compensation for pain and suffering. *Id.* MRRJ officials responded to the first two grievances within ten days, and plaintiff did not appeal those responses. (Dkt. No. 12-1, at 22-23; 18, at 3-5.

However, MRRJ officials did not respond to plaintiff's third grievance, and only noted that plaintiff had been transferred to the "D.O.C." on February 13, 2009, two days after submitting his grievance. (Dkt. No. 18-1, at 1-3.) In his affidavit, Jack Lee, superintendent of MRRJ, states, "Since Plaintiff was transferred before staff could respond to [the third grievance], his grievance was deemed final as of the date of transfer." (Dkt. No. 20-1, at 1.)

It is a generally accepted principle that administrative remedies are exhausted when officials fail to respond to grievances, because those remedies essentially have become

unavailable. *See Hill v. O'Brien*, 387 Fed.Appx. 396, 401 (4th Cir. July 12, 2010) (citing *Lewis v. Washington*, 300 F.3d 829, 831-32 (7th Cir. 2002)); *Morva v. Johnson*, 7:09CV00515, 2011 WL 3420650, at *5 (W.D.Va. August 4, 2011) (citing *Lewis*, 300 F.3d, at 831-832). The defendants have not proffered evidence that MRRJ officials either responded to plaintiff's third grievance or provided notice to him that they considered the grievance final as of his date of transfer. In other words, there is nothing here hinting that administrative remedies remained available after his date of transfer from MRRJ.

Of course, in the event the presiding District Judge adopts the undersigned's recommendation to dismiss plaintiff's claims against Maas, the entire issue of exhaustion of any claims against him becomes moot, and should be DENIED on that ground. Alternatively, the undersigned finds that plaintiff never received notice of the MRRJ decision and essentially was deprived of any opportunity to exhaust because of his transfer into state custody. Therefore, Maas' motion for summary judgment for failure to exhaust should be DENIED, and it is so RECOMMENDED.

Concerning plaintiff's claims against Tyree and Fisher, there is no question that Tyree was not an MRRJ employee and that there were no administrative remedies available through the Augusta County Sheriff's Department. Plaintiff is not required to exhaust administrative remedies that are not available or, as here, don't exist. Accordingly, the undersigned RECOMMENDS that the defendants' motion for summary judgment for failure to exhaust also be DENIED with respect to the claims against Tyree and Fisher.

### b. Statute of Limitations

The defendants also collectively argue that plaintiff's state law claim based on gross negligence is barred by the applicable statute of limitations. They point out that a person

confined to a state or local correctional facility must bring claims relating to conditions of confinement within one year after the cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later. VA Code Ann. § 8.01-243.2 ("§ 8.01-243.2"). [17] (Dkt. No. 11, at 7.) They also point out that plaintiff filed his first complaint more than one year after his cause of action accrued, and accordingly, that his state law claims against each of them should be dismissed.

Plaintiff does not challenge the application of § 8.01-243.2 to this case, but he argues that, because MRRJ officials failed to process his third grievance in the proper manner by giving him notice of any decision, the period has not commenced, nor will it commence until he receives notice of the decision. (Dkt. No. 18, at 9.) He acknowledges separately, however, that there were no administrative remedies available against either Deputy Tyree or Sheriff Fisher. (Dkt. No. 18, at 3.)

It has been recognized in this District that § 8.01-243.2 applies to all actions brought by persons who are confined and who allege unconstitutional conditions of confinement, though it does not apply to those who have been released. *See Jackson v. Fletcher*, No. 7:09CV00408, 2011 WL 197954, at *10-11 (W.D.Va. January 18, 2011). The Supreme Court of Virginia has applied the statute to both pre-trial detainees and post-conviction inmates. *See Bing v. Haywood*, 283 Va. 381, 384-387 (2012). Moreover, the term "conditions of confinement" has been defined broadly enough to include matters related to transportation of inmates. *See Foreman v. Unnamed Officers of the Federal Bureau of Prisons*, No. DKC-09-2038, 2010 WL 2720817, at * 4-5 (D.Md. July 7, 2010); *See also Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012); *Theilman v. Leean*, 282 F.3d 478 (7th Cir. 2002).

---

[17] In contrast, the general personal injury statute of limitations provides two years from the date the cause of action arose. *See* VA Code Ann. § 8.01-243(A).

Of course, the question is moot as to Maas, as plaintiff's claims against him should be dismissed on other grounds. In the alternative, the undersigned simply would note that plaintiff has argued himself into a bit of a corner. Either his administrative remedies are exhausted or they are not. If they are exhausted, as plaintiff has previously argued, then the six month statute of limitations began running in early 2009 after MRRJ failed to respond to plaintiff's third grievance, and, accordingly, the six month period ran long before plaintiff first filed an action in the Circuit Court of August County, Virginia on May 25, 2010. (Dkt. Nos. 1, at 2; 18-1.) If plaintiff's administrative remedies are not exhausted, that would necessitate dismissal of his state law claim to permit exhaustion.

Other questions do arise, however, where exhaustion has been waived. Would that simply mean that exhaustion could not be asserted as a defense? Or, when coupled with a statute of limitations defense, would the defendant be estopped from raising this defense because plaintiff never was afforded the process he was due, namely the opportunity to exhaust, before the statute ran? The undersigned does not believe the court needs to resolve that issue because plaintiff cannot state a claim for relief for alleged gross negligence against Maas. Therefore, the undersigned RECOMMENDS that the defendants' motion for summary judgment concerning plaintiff's gross negligence claim against Maas should be DENIED, as moot.

On the other hand, because there were no administrative procedures available to plaintiff on his claims against Tyree and Fisher, plaintiff was required to bring suit within one year of the alleged incident which occurred on June 5, 2008. VA Code Ann. § 8.01-243.2. Plaintiff first filed an action in the Circuit Court of August County, Virginia on May 25, 2010, which is well

Case 5:12-cv-30028-MFU-BWC   Document 25   Filed 02/01/13   Page 25 of 27   Pageid#: 163

beyond one year.[18]  (Dkt. No. 1, at 2.)  Therefore, the undersigned RECOMMENDS that the

motion for summary judgment filed by the defendants as to plaintiff's state law claim of gross

negligence against Tyree and against Fisher on the basis of *respondeat* superior liability be

GRANTED because his claim is barred by the applicable statute of limitations and that Fisher be

dismissed from this case.[19]

**SUMMARY**

> For these reasons the undersigned RECOMMENDS that the court enter an Order:

1)  GRANTING Maas' motion to dismiss plaintiff § 1983 claim and plaintiff's

supplemental state law claim for gross negligence against him and dismissing Maas

from this action;

2)  GRANTING  the motion for summary judgment filed by Tyree and Fisher on the

supplemental state law claim for gross negligence as time barred and dismissing

Fisher from this action;

3)  DENYING Tyree's motion to dismiss the § 1983 claim for failure to state a claim and

for qualified immunity;

4)  DENYING, as moot, the motion for summary judgment filed by Maas for failure to

exhaust or as barred by the statute of limitations.

> The Clerk is directed to immediately transmit the record in this case to the presiding

United States District Judge.  Both sides are reminded that pursuant to Rule 72(b), they are

entitled to note objections, if any they may have, to this Report and Recommendation within

---

[18] The suit was within the two year statute of limitations applicable generally for personal injury set forth in. VA Code Ann. § 8.01-243. Neither party has argued that the general personal injury statute of limitations could apply in this case.
[19] Plaintiff had no Section 1983 claim against the Fisher, because officials cannot be held vicariously liable on Section 1983 claims under a theory of *respondeat superior*.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 675-676 (2009).

Case 5:12-cv-30028-MFU-BWC   Document 25   Filed 02/01/13   Page 26 of 27   Pageid#: 164

fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

February 1 2013
Date